IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P NORELLI, | No. C06-07335 MJJ |
| Plaintiff, | **ORDER DENYING PETITIONER'S MOTION TO EXTEND AFFIRMATIVE BARGAINING ORDER** |
| v. | |
| SFO GOOD-NITE INN, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Petitioner Joseph P. Norelli's Motion to Extend Affirmative Bargaining Order Under Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j)[1] ("the Act"). Mr. Norelli is the Regional Director of Region 20 and brings this motion for, and on behalf of, the National Labor Relations Board ("Petitioner" or "Board"). Petitioner seeks a supplemental order extending the affirmative bargaining order of the temporary injunction issued by this Court on March 1, 2007[2] until the final disposition of the Complaint now pending before the Board. The pending Complaint charges that Respondent, SFO Good-Nite Inn, LLC ("Respondent"), is engaging in unfair labor practices in violation of Section 8(a)(1), (2), and (5) of the Act. Respondent opposes the motion to extend the affirmative bargaining order.

For the following reasons, the Court **DENIES** Petitioner's Motion to Extend Affirmative

---

[1] Docket No. 31.

[2] Docket No. 28.

Bargaining Order Under Section 10(j) of the Act.

## PROCEDURAL BACKGROUND

On March 1, 2007, in granting Petitioner's Section10(j) petition, this Court evaluated the traditional equitable criteria "through the prism of the underlying purpose of Section 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge." *Miller v. California Pacific Medical Center*, 19 F.3d 449, 459-60 (9th Cir. 1994). In doing so, the Court found that: (1) Petitioner had demonstrated a strong likelihood of success of prevailing on the merits of the section 8(a)(1), (3), and (5) allegations; (2) Petitioner had sufficiently established irreparable harm; (3) Petitioner had demonstrated that the balance of hardships tipped in its favor; and (4) the public interest was advanced by the granting of a temporary injunction.[3] As a result of these findings, this Court ordered the following.

Respondent to cease and desist from:

(1) Threatening employees with loss of benefits or promising benefits, in order to discourage union membership or activities;

(2) Discharging employees or laying off employees, in order to discourage union activities and union membership;

(3) Withdrawing recognition from the Union as the exclusive collective-bargaining representative of the Respondent's employees in the appropriate bargaining unit;

(4) Refusing to meet and bargain with the Union as the exclusive collective-bargaining representative of Respondent's employees in the appropriate bargaining unit with respect to rates of pay, hours of employment, and other terms and conditions of employment including contributions to health insurance, union security, and wages;

(5) In any like or related manner interfering with, restraining or coercing employees in the

exercise of their rights guaranteed by Section 7 of the Act.

(Temporary Injunction Order at 23.)

---

[3] As a result of the section 10(j) temporary injunction and pursuant to 29 C.F.R. § 102.94, on March 6, 2007, Petitioner requested expeditious handling of the underlying Section 8(a)(1), (2), and (5) claims that are now before the Board.

2

The Court also ordered Respondent to take the following affirmative steps:

(1) Within five (5) days of the issuance of this Order, offer in writing, immediate interim reinstatement to Christina Valencia and Maria Maldonado to their former position at their previous, wages, hours and other terms and conditions of employment, displacing, if necessary, any workers hired or reassigned to replace them;

(2) Upon request, meet at reasonable times and bargain in good faith with the Union as the exclusive collective-bargaining representative of its employees in the appropriate bargaining unit, with respect to rates of pay, hours of employment, and other terms and conditions of employment until either a good-faith lawful impasse or an understanding on a new collective-bargaining agreement is reached and, if such an understanding is reached, embody such understanding in a signed agreement.  The obligation to meet and bargain shall be for a reasonable period of time, not to exceed 90 days from the issuance of this Order and it shall, in no event, constitute less than three (3) negotiating sessions that are attended by all necessary parties.  Nothing in this Order shall interfere with the parties' statutory right to engage in a lawful strike and/or a lawful lockout, nor require Respondent to rescind any changes in terms and conditions of employment that were implemented after September 14, 2005, without bargaining in good faith with the Union.  The appropriate bargaining unit is: all employees covered by the collective-bargaining agreement between Respondent and the Union, effective by its terms until November 20, 2004, as extended;

(3) Post copies of this Order at Respondent's South San Francisco, California facilities in all locations where notices to employees are customarily posted; maintain these postings during the Board's administrative proceeding free from all obstruction and defacement; grant all employees free and unrestricted access to the posting; and grant to agents of the Board reasonable access to Respondent's South San Francisco, California facilities to monitor compliance with the posting requirement; and

(4) Within twenty (20) days of the issuance of this Order, file with the Court, with a copy served on the Regional Director for Region 20 of the Board, a sworn affidavit from a responsible official of Respondent, setting forth with specificity the manner in which Respondent is complying

with the terms of the Order, including the locations of the posted documents and proofs of mailing. (*Id*. at 23-24.)

## FACTUAL BACKGROUND

Pursuant to the affirmative bargaining portion of the temporary injunction order, the parties have engaged in six bargaining sessions on April 20, April 27, May 10, May 24, June 15, and July 2, 2007 without reaching a new collective bargaining agreement. (Norelli Decl. at ¶ 2; Jordan Decl. at ¶¶ 7-9.)

The parties currently dispute whether they have reached an good faith impasse in their collective bargaining negotiations. Petitioner contends that "there are multiple issues on the table, and there has just been the most preliminary initial exchange of proposals." (O'Connor Decl. at ¶ 5.) According to Respondent's counsel, the parties have engaged in nearly 33 hours of negotiations, and that the parties officially reached an impasse during their July 2 negotiation session. (Jordan Decl. ¶ 9.) At the conclusion of that session, after the parties concluded there would be no further movement in their respective positions, Respondent's counsel declared an impasse. (*Id*. at ¶ 11.) Respondent's counsel contends that Petitioner's representative rejected the notion of an impasse but was otherwise unable to present any new proposals. (*Id*.) Accordingly, on July 7, 2007, Respondent's counsel sent a letter to the Union summarizing the substance of the July 2, 2007 session with a written summary of Respondent's proposals rejected by the Union. (*Id*. at ¶ 12.)

Subsequently, on July 12, 2007, the Union filed an new unfair labor practice charge with Region 20 of the NLRB, alleging that Respondent, "on or about July 7 . . . prior to having reached a good-faith impasse in its negotiations with the [ ] Union for a successor collective-bargaining agreement, announced that it would immediately implement, in whole or in part, its final offer." (Second Norelli Decl. at ¶ 3, Ex. A, Case No. 20-CA-33497.)

## LEGAL STANDARD

Section 10(j) of the Act provides that, in response to a request for interim relief from the Board's Regional Director ("the Director"), the district court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j). Section 10(j) was enacted by Congress to provide interim injunctive relief protecting the integrity of

4

the collective-bargaining process while the NLRB resolves an unfair labor practice charge. *Miller*, 19 F.3d 449 at 459-60. In adjudicating a Section 10(j) request, the district court "should rely on traditional equitable principles to determine whether interim relief is appropriate." *Scott ex rel. N.L.R.B. v. Stephen Dunn & Assoc.*, 241 F.3d 652, 660 (9th Cir. 2001) (citing *Miller*, 19 F.3d 449).

To secure relief under Section 10(j), the Regional Director must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." *Miller*, 19 F.3d at 456 (quoting *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 977 (9th Cir. 1992)). If the Court finds probable success on the merits, then the possibility of irreparable harm is presumed. *Id*. at 459. If, however, the Court finds only a fair chance of success on the merits, the Court must engage in a balancing of hardships. *Id*. This formulation reflects the traditional "sliding scale" of equity jurisprudence where "the required degree of irreparable harm increases as the probability of success decreases." *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir. 1987).

In *Miller*, this traditional formulation was modified in one respect. In the context of a Section 10(j) petition, the court must evaluate the traditional equitable criteria "through the prism of the underlying purpose of Section 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge." *Miller*, 19 F.3d at 459-60. Thus, the Board's ability to meaningfully adjudicate disputes arising within its jurisdiction must be balanced against the respondent's showing of hardship. *Id*. at 460. Appropriate injunctive relief under Section 10(j) can include cease-and-desist orders and interim bargaining orders. *Stephen Dunn & Assoc.*, 241 F.3d at 660-61.

**ANALYSIS**

The Court must determine whether there exist grounds to extend the duration of Respondent's affirmative bargaining obligation—as set forth in this Court's March 1, 2007 temporary injunction order—pending the Board's final disposition of the original unfair labor charges against Respondent. The Court must make its determination against the backdrop of Petitioner's new unfair labor practice charge against Respondent for allegedly implementing its final

5

1 offer without actually having reached a good faith impasse.

3 Petitioner contends that an extension of the bargaining order is proper in order to protect the integrity of the collective bargaining process, especially in this case where there has already been a finding of unfair labor practices. Respondent insists that it has fully complied with the Court's affirmative bargaining order and that notwithstanding the Court's affirmative bargaining order, the Court does not have jurisdiction to determine whether there was a good faith impasse during the collective bargaining negotiations. According to Defendant, that issue is for the Board to decide in the context of the new unfair labor practice charge.

Neither party has provided the Court with authority that is directly on point. However, several circuits have expressed concern that a Section 10(j) "temporary injunction entered without reaching the ultimate merits of a dispute may become, in effect, a final disposition of the controversy." *Heisenberg v. Hartz Mountain Corp.*, 519 F.2d 138, 144 (3d Cir. 1975); *see also Kaynard v. Mego Corp.*, 633 F.2d 1026, 1035 (2d Cir. 1980) (stating "in the interval between the grant of an injunction and final adjudication by the Board, the rights of the parties will have been determined by a court rather than by the expert agency established by Congress."); *Sheeran v. Am. Comm. Lines*, 683 F.2d 970, 980-81 (6th Cir. 1982); *Levine v. C & W Mining Co.*, 610 F.2d 432, 437 (6th Cir. 1979); *Dawidoff v. Minneapolis Bldg. & Const. Trades Council*, 550 F.2d 407, 414 (8th Cir. 1977). Sharing this concern for expediency, other circuits have imposed time limitations on Section 10(j) injunctions. *See Hartz Mountain Corp.*, 519 F.2d at 144 (holding that a Section 10(j) injunction should include an explicit time limitation, not longer than six months); *Heisenberg v. Holland Rantos Co., Inc.*, 583 F.2d 100, 103-04 (3d Cir. 1978) (same).

Here, although this Court has jurisdiction and authority to extend the affirmative bargaining order, it declines to do so on the current record. The Court acknowledges that in evaluating the propriety of a temporary injunction in this context, it must evaluate the traditional equitable criteria "through the prism of the underlying purpose of Section 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge." *Miller*, 19 F.3d at 459-60; *See also Brown for and on Behalf of N.L.R.B. v. Pacific Tel. &*

6

*Tel. Co.*, 218 F.2d 542, 544 (9th Cir. 1955) (granting Section 10(j) relief and recognizing the irreparable harm which the designated unions may suffer by the drifting away of their members to the union favored by the employers.). However, protecting the integrity of the collective bargaining process does not require courts to issue Section 10(j) injunctions with indefinite durations. *See Hartz Mountain Corp.*, 519 F.2d at 144; *Holland Rantos Co., Inc.*, 583 F.2d at 103-04.

In *Hartz Mountain Corp.*, the court explained the need for Section 10(j) injunctions to be of finite duration. *Hartz Mountain Corp.*, 519 F.2d at 144. There, the court stated,

> [A]t the present pace of administrative procedure, it is conceivable that the three-year collective bargaining agreement, that was temporarily suspended by the injunction in this case, may expire [ ] of its own time limitation before the Board determines whether the union was the lawful bargaining representative of the employees. While we do not attribute to anyone an intention to abuse the process of the district court, that can be the result if a Section 10(j) injunction remains in effect overlong . . . In our view, a six-month period from the date of issuance of a Section 10(j) injunction should suffice, save in the most extraordinary circumstances, for the completion of expedited action by an administrative law judge on the underlying complaint. Accordingly, we hold that in this circuit such an injunction should include an explicit time limitation, not longer than six months, on the restraint it imposes. If it is believed that injunctive relief or its continuation is warranted after the findings and recommendations of the administrative law judge have been entered, upon proper petition in an appropriate case a district judge may grant or continue a Section 10(j) injunction for an additional period of not more than six months to permit Board action upon those recommendations. Moreover, these six-month limitations shall not preclude a district judge from extending the life of any Section 10(j) injunction for an additional thirty-day period upon a showing that administrative action on the underlying controversy seems to be imminent.

*Id.* In response to this reasoning, Petitioner cites *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 747 (9th Cir. 1988), *overruled by*, *Miller v. California Pacific Medical Center*, 19 F.3d 449, 459-60 (9th Cir. 1994), and argues that the Ninth Circuit imposes no such time limitation for Section 10(j) injunctions.

However, *Aguayo* does not require District Courts to issue Section 10(j) injunctions with indefinite durations. Unlike the current case, *Aguayo* did not implicate concerns for indefinite Section 10(j) injunctions because *Aguayo* did not involve an affirmative bargaining order requiring the parties to negotiate for any specified period of time. Rather, in *Aguayo*, the injunction at issue required the respondent to reinstate eleven former employees. *Id.* at 752. Because *Aguayo* did not

7

address the concerns regarding the indefinite duration of Section 10(j) injunctions that are present on the current record, it does not support Petitioner's position.

Rather, the current record, as it relates to the nature of the bargaining sessions conducted pursuant to the Court's order, does not support extension of the bargaining component of the temporary injunction order.  The Court makes this finding having evaluated the record of the parties compliance with the bargaining component of the court's temporary injunction order and the unfair practices that gave rise to grant of injunctive relief in the first instance.  While it is true that district courts have both inherent and statutory authority to coerce compliance with their orders, Petitioner has failed to convince the court that it should grant the relief requested by Petitioner.  *See e.g., International Union, UMWA v. Bagwell*, 512 U.S. 821, 831–32 (1994).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Motion to Extend Affirmative Bargaining Order Under Section 10(j) of the Act.

**IT IS SO ORDERED.**

Dated: August 13, 2007

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE